IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MEYER NATURAL FOODS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-1329-D |
| | ) | |
| C.R. FREEMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss or, Alternatively, Stay [Doc. No. 19], which first seeks dismissal pursuant to Rule 12(b)(7) and Rule 19(b), Fed. R. Civ. P. If the case is not dismissed, Defendants request a stay under the *Colorado River*[1] doctrine, due to the pendency of parallel state court proceedings between the same parties. Plaintiff has responded in opposition to the Motion, and Defendants have replied. Thus, the Motion is at issue.

**Factual and Procedural Background**

Plaintiff Meyer Natural Foods, LLC ("Meyer") is a limited liability company whose members are citizens of states other than Oklahoma; Defendants C.R. Freedman, Kirk Duff, and Todd Duff are individual citizens of Oklahoma. Meyer and Defendants are parties to several written agreements dated May 19, 2011, by which Meyer purchased a majority interest in Premium Natural Beef, LLC ("PNB"). PNB is a limited liability company, which Defendants formed and wholly owned before the purchase, engaged in the business of marketing, distributing, and selling natural Angus beef and beef products under the brand name, "Premium Natural Beef." In addition to a purchase agreement, the parties executed an amended limited liability company agreement of PNB

---

[1] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

(the "Operating Agreement"), under which Meyer gained a 51 percent capital interest in PNB and a 60 percent interest in PNB's net profits and became the managing member of PNB. Defendants collectively retained a 49 percent capital interest and a 40 percent interest in net profits. Defendants are members of other limited liability companies: C.R. Freeman owns Premium Beef Feeders, LLC ("PBF"); and Kirk Duff and Todd Duff own Power Plus Feeders, LLC ("PPF"). As part of the purchase transaction, these companies entered into agreements with Meyer and PNB under which PBF and PPF agreed to supply natural cattle meeting certain requirements exclusively to Meyer and PNB for a period of five years. The purchase agreement allegedly contains restrictive covenants by which Defendants agreed not to participate in a competing business, and not to use PNB's trademarks, trade names, service marks, domain names, or logos.

Meyer brings this action under federal diversity jurisdiction for injunctive relief and damages based on various alleged breaches of these agreements and restrictive covenants. In Count I of the Complaint, Meyer claims that Defendants breached the purchase agreement by failing to indemnify Meyer for a loss it suffered because a warranty regarding PNB's net assets was inaccurate, and there was a $160,892 deficiency on the date of closing. In Count II, Meyer claims Defendants breached covenants of good faith and fair dealing under the Operating Agreement and the purchase agreement by first demanding a larger share of profits of PNB or a share of certain fees paid to Meyer by PNB, and then "embark[ing] on a course of conduct to extricate themselves from their [contractual] obligations . . . by putting PNB out of business" so that, among other things, Defendants "could appropriate the business of PNB for themselves, and in particular, the business of PNB's largest customer."[2] *See* Compl. [Doc. No. 1] ¶ 18. The specific acts of Defendants allegedly included:

---

[2] Another intended result of Defendants' conduct allegedly was that "Defendant's companies [PBF and PPF] would no longer be bound by the Supply Agreement." *Id*.

2

a) demanding from PNB a higher price for cattle provided by PBF and PPF under the supply agreement; b) purporting to terminate the supply agreement (on behalf of PBF and PPF); c) falsely claiming that Meyer had breached the Operating Agreement; d) falsely claiming that PNB's supply of mislabeled beef to a key customer was Meyer's fault; e) failing to supply a promised amount of cattle to PNB for the needs of the key customer, which caused PNB to breach its contractual obligations to the customer and caused the customer to terminate its contract with PNB. Defendants' conduct allegedly "depriv[ed] PNB of its major source of income and threaten[ed] it with financial ruin and render[ed] virtually worthless Meyer's investment . . . in PNB." *Id.* Meyer seeks compensatory damages in Count II for the loss of its investment, profits from PNB, and fees to which it was entitled under the Operating Agreement, and in Count III, exemplary damages to punish Defendants for malicious conduct. Count IV seeks injunctive relief, an accounting, and damages for Defendants' alleged breaches of restrictive covenants by their participation in businesses that compete with PNB and their use of PNB's trade name, trademark, or similar marks.

Before Meyer commenced this action, Defendants brought suit against Meyer and PNB in two state court cases, one filed individually and one filed by PBF and PPF. In *Freeman v. Premium Natural Beef, LLC*, Case No. CJ-2012-29 (Dist. Ct. Kiowa County, Okla.), the individuals alleged that Meyer, as the managing member of PNB, breached contractual and fiduciary duties to other members by failing to pay distributions to which they were entitled under the Operating Agreement, and by paying monies to affiliates of Meyer without their consent; the petition also sought an accounting from PNB and Meyer. The Court takes judicial notice that Meyer removed the individuals' case to federal court based on a subsequent amendment of the petition that added claims for rescission of the Operating Agreement and the purchase agreement, and damages due to Meyer's alleged misrepresentation of material facts, fraudulent conduct, and mismanagement of PNB. *See*

3

*Freeman v. Premium Natural Beef, LLC*, Case No. CIV-12-1390-D, Notice of Removal (W.D. Okla. Sept. 14, 2012). The allegations against Meyer include that it was unfairly competing with PNB, depriving it of customers, and diverting money to Meyer's affiliates, and that Meyer had grossly mismanaged PNB's operations to the point of losing a key customer and destroying the company. The undersigned recently ordered a remand of the case to state court. *See id.* Order of Sept. 27, 2013.

In the second case, *Premium Beef Feeders, LLC v. Premium Natural Beef, LLC*, Case No. CJ-2012-30 (Dist. Ct. Kiowa County, Okla.), PBF and PPF sought declaratory relief regarding the supply agreement, and damages from PNB and Meyer for alleged breach of the supply agreement, breach of a duty of good faith and fair dealing, and tortious interference with business relationships between PBF, PPF, and their cattle suppliers. PNB and Meyer answered and filed counterclaims for breach of the supply agreement, and breach of restrictive covenants and obligations to PNB and Meyer under the supply agreement, the Operating Agreement, and the purchase agreement between the individuals and Meyer.[3] PNB and Meyer also asserted counterclaims for declaratory and injunctive relief, and specific performance of the supply agreement or replevin of certain cattle.

By their Motion, Defendants contend that PNB is the real party in interest for Meyer's claims alleging injury to PNB, and that PNB is a necessary party who cannot be joined without destroying diversity of citizenship.[4] Defendants thus seek dismissal of this action due to Meyer's failure to join

---

[3] These counterclaims apparently are directed at the individuals (Defendants in this case) since PBF and PPF are not parties to the Operating Agreement or the purchase agreement.

[4] The parties in this case agree that the citizenship of a limited liability company is determined by the citizenship of its members. Although the Tenth Circuit has not decided the issue, federal appellate courts have unanimously held that a limited liability company should not be treated like a corporation under
(continued...)

4

an indispensable party. Meyer responds that PNB is neither a necessary nor indispensable party to this action. Alternatively, Defendants contend this case and the state court litigation between the parties constitute parallel actions because the claims asserted by Meyer in this case have been, or should be, brought as compulsory counterclaims in the state court cases. Thus, Defendants seek a stay of this case in deference to the state court's exercise of jurisdiction over the subject matter. Meyer responds that abstention is not warranted and its choice of a federal forum should be respected.

## Indispensable Party

Rule 12(b)(7) authorizes the dismissal of a complaint for "failure to join a party under Rule 19." *See* Fed. R. Civ. P. 12(b)(7). "The proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). Rule 19(b) authorizes dismissal only if a necessary party, as defined by Rule 19(a), cannot be joined, and the absent party is determined to be indispensable upon application of the requisite factors. *See Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001); *see also Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001); *Davis v. United States*, 192 F.3d 951, 958-59 n.6 (10th Cir. 1999).

---

[4](...continued)
28 U.S.C. § 1332(c)(1), but like a limited partnership or other unincorporated association under *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006); *General Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998).

Prior to remanding the related case between these same parties, *Freeman v. Premium Natural Beef, LLC*, Case No. CIV-12-1390-D, the Court determined that some claims asserted by the minority members of PNB (Defendants here) were derivative claims to which PNB was a necessary party. Although the claims asserted in that case were brought against the majority member of PNB (Meyer) for breach of fiduciary duty, the claims asserted in this case against the minority members for breaching their duties of good faith under the Operating Agreement are similar in nature. Particularly with regard to Meyer's claim that other members of PNB acted together in an effort to ruin PNB and win a key customer for themselves (or their companies), the injured party is PNB and not merely an individual member. *See*, *e.g.*, *Weber v. King*, 110 F. Supp. 2d 124, 127 (E.D.N.Y. 2000) (LLC was a necessary party to suit by two members against a third member and others who allegedly engaged in concerted conduct to deprive plaintiffs of their investment in LLC; LLC's interest was distinct from its members); *Trademark Retail, Inc. v. Apple Glen Investors,* LP, 196 F.R.D. 535, 541-42 (N.D. Ind. 2000) (LLC was necessary party in suit by one member against another who allegedly obstructed performance of contracts to the detriment of plaintiff and the LLC). It is undisputed that the joinder of PNB is not feasible. *See supra* note 4.

The determination whether a party is indispensable depends on the following factors:

(1) the extent to which a judgment rendered in the person's absence might be prejudicial to the person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
(A) protective provisions in the judgment;
(B) shaping the relief; or
(C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate;
(4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Upon consideration of these factors in this case, the Court finds that only the fourth one clearly weighs in favor of dismissal. Meyer could bring suit against Defendants in state

court, or seek to join its claims as counterclaims in the pending state court cases. As to the other factors, the Court is persuaded by the analysis of federal courts in other cases involving all partners of a limited partnership or all members of an LLC as parties, that the absent partnership or LLC is not indispensable. *See*, *e.g.*, *HB General Corp. v. Manchester Partners, L.P.*, 95 F. 3d 1185, 1193 (3rd Cir. 1996). The potential prejudice to Defendants from the absence of PNB could be minimized or simply avoided by fashioning the relief to be granted and entering an appropriate judgment. For example, if Meyer prevails on its claims, it could be enjoined from pursuing the same claims on behalf of PNB.

In short, the Court finds that Defendants have failed to show this case should be dismissed for nonjoinder of an indispensable party.

## Abstention

Defendants seek a stay of this action under the abstention doctrine of *Colorado River*. This doctrine controls when deciding whether a district court should stay or dismiss a federal case pending the resolution of a parallel state court proceeding. *See Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). The doctrine rests on a desire for judicial economy, not from constitutional concerns about federal-state comity, and requires a determination that "there exist '*exceptional circumstances, the clearest of justifications*, that can suffice under *Colorado River* to justify the surrender of jurisdiction.'" *Id.* at 1303 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25-26 (1983), emphasis added in *Rienhdart*). Under this doctrine, federal courts have the power to refrain from hearing cases that are duplicative of a pending state court proceeding; "the avoidance of duplicative litigation . . . is at the core of the *Colorado River* doctrine." *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013).

7

In deciding the application of the *Colorado River* doctrine, a threshold issue is whether the state and federal actions are parallel. *United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (2002). "[E]xact identity of parties and issues is not required." *Id.* Instead, state and federal suits are parallel "if substantially the same parties litigate substantially the same issues." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (internal quotation omitted).

This case clearly parallels the two state court cases brought by Defendants or their companies against Meyer and PNB. Some of the same claims asserted in this case have already been brought as counterclaims against PBF and PPF in their case. *See supra* note 3. The individuals' claims against Meyer and PNB, and Meyer's claims against them in this case, are opposite sides of the same coin. Both cases seek the resolution of internal conflicts among the members of PNB, and in each case, one side accuses the other of causing its business difficulties and losses. Meyer initiated this case upon being informed that Defendants intended to add claims in their state court case concerning Meyer's alleged mismanagement and damage to PNB. Meyer raced to this courthouse in an apparent effort to beat Defendants to the punch, while they awaited the state court's permission to file their amended pleading. *See Freeman v. Premium Natural Beef, LLC*, Case No. CIV-12-1390-D, Order at 3-4 (W.D. Okla. Sept. 27, 2013) (describing procedural history of that case). Meyer's claims against the minority members of PNB are part of the same controversy as the members' claims against Meyer.

The Supreme Court has identified four factors to consider in determining whether to invoke the *Colorado River* doctrine: "(1) whether the state or federal court first assumed jurisdiction over the same res; (2) 'the inconvenience of the federal forum'; (3) 'the desirability of avoiding piecemeal litigation'; and (4) 'the order in which jurisdiction was obtained by the concurrent forums.'" *D.A. Osguthorpe*, 705 F. 3d at 1234 (quoting *Colorado River*, 424 U.S. at 818). However, "the latter two

factors weigh heavily on our analysis. The 'paramount' consideration in *Colorado River* was the third factor: 'the danger of piecemeal litigation.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)). In *Moses H. Cone*, the Supreme Court "supplemented its original *Colorado River* framework with additional factors for courts to weigh when deciding the appropriateness of abstention[:] . . . whether 'federal law provides the rule of decision on the merits,' and whether the state-court proceedings adequately protect the litigants' rights." *Id.* at 1235 (citations omitted; quoting *Moses H. Cone*, 460 U.S. at 23, 26-27).

Upon consideration of these factors in this case, the Court finds that abstention is warranted. Here, unlike *D.A. Osguthorpe*, Defendants do not contend the state court cases have already consumed a substantial amount of judicial resources. However, the fact that the cases involve overlapping and competing claims to the same limited liability company counsels against letting them proceed simultaneously. Because the cases seek the interpretation and application of the same contracts and seek to remedy some of the same injuries to PNB, piecemeal litigation of the issues would result from the duplicative litigation in both forums. There is no contention that any federal laws are at issue.[5] Nor does Meyer effectively contend that its rights will not be adequately protected in the state court proceedings.[6] In short, of the applicable factors, all point to abstention.

**Conclusion**

For these reasons, the Court concludes that this case should not be dismissed but that it should be stayed during the pendency of state court litigation between the parties concerning the

---

[5] The Complaint alleges that "Premium Natural Beef" is a registered trademark, but no claim of trademark infringement is apparently asserted.

[6] The Court takes judicial notice that the purchase agreement expressly authorizes suit in state or federal court. *See Freeman v. Premium Natural Beef, LLC*, Case No. CIV-12-1390-D, Pls.' Reply Br. Mot. Remand, Ex. 1 (W.D. Okla. Feb. 1, 2013).

same issues. If any issue raised by the Complaint remains unresolved after the state court cases are concluded, Meyer may request that the stay be lifted in order to proceed to judgment on its claims in this case.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or, Alternatively, Stay [Doc. No. 19] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 30th day of September, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE